# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, DC

## UNITED STATES
### v.
### Shelby D. Crawford
### Electrician's Mate Third Class, U.S. Coast Guard

### CGCMS 24110
### Docket No. 1052
### 27 May 1997

Special Court-Martial convened by Commanding Officer USCGC Spar (WLB 403). Tried at the U.S. Coast Guard Marine Safety Office, Portland, Maine, on 21 March 1995.

| | |
|---|---|
| Military Judge: | CDR Michael J. Devine, USCG |
| Trial Counsel: | LCDR Samuel R. Watkins, USCG |
| Detailed Defense Counsel: | LT Kathleen A. Duignan, USCGR |
| Appellate Defense Counsel: | LCDR Allen Lotz, USCG |
| Appellate Defense Counsel: | LT Richard R. Beyer, USCGR |
| Appellate Government Counsel: | LCDR Brian F. Binney, USCG |

## BEFORE
## PANEL TWO

## BAUM, FEARNOW, AND O'HARA
Appellate Military Judges

Baum, Chief Judge:

Appellant was tried by special court-martial judge alone. Pursuant to his guilty pleas, entered in accordance with a pre-trial agreement, he was convicted of the following offenses: one specification of making a false official statement; one specification of wrongful appropriation; one specification of attempted wrongful appropriation; one specification of forgery; and one specification of wrongful use of marijuana in violation of Articles 107, 121, 80, 123, and 112a, of the Uniform Code of Military Justice (UCMJ). The judge sentenced appellant to a bad conduct discharge, confinement for one month, and

reduction to pay grade E-3, which was approved by a substitute convening authority, Commander, First Coast Guard District, as permitted by the pre-trial agreement. Before this Court, appellant assigned three errors, which were orally argued. Subsequent to oral argument, a supplemental brief was filed asserting a fourth assignment of error.

In his first assignment, appellant asserts that his pleas of guilty to wrongful appropriation and attempted wrongful appropriation were improvident because the military judge failed to advise him of the element of intent to deprive for each offense and failed to elicit information during the plea providence inquiry that establishes that element. We reject this assignment because the judge's inquiry, which includes the colloquy with appellant and a stipulation of fact, when taken as a whole, provides a sufficient factual basis for each offense's elements and convinces us that appellant understood all elements of the offenses. Another assignment challenging the civilian judicial appointment to this Court is rejected based on *Edmond v. U.S.*, 65 U.S.L.W. 4362 (U.S. May 19, 1997). The remaining two assignments will be addressed. All motions to file documents not previously granted are hereby granted.

## I

## THAT THE ACTION OF THE CONVENING AUTHORITY MUST BE SET ASIDE BECAUSE THE CONVENING AUTHORITY CONSIDERED ADVERSE MATTERS FROM OUTSIDE THE RECORD WITHOUT NOTIFYING THE ACCUSED OR HIS COUNSEL AND WITHOUT PROVIDING THEM AN OPPORTUNITY TO RESPOND

After trial, a defense motion to remove appellant's commanding officer from his post-trial role in the case resulted in the commanding officer agreeing to remove himself and forward the record for action to Commander, First Coast Guard District, the officer exercising general court-martial jurisdiction (GCM authority). That officer's staff judge advocate prepared a post-trial recommendation pursuant to R.C.M. 1106 (SJAR), which was signed on 12 June 1995 and provided to the defense. In response, the trial defense counsel submitted a petition for clemency dated 29 June 1995, which addressed matters in the SJAR. That petition for clemency and the SJAR were considered by the District Commander when he took action on the record on 31 July 1995. Appellant's assignment of error does not fault the process in this respect, but, rather, asserts that the District Commander, to appellant's detriment, also considered additional matters from outside the record that were adverse to appellant.

The matters of which appellant complains were new charges similar to those involved in the instant case. These charges were preferred against appellant on 10 May 1995 and forwarded to the District Commander for action that date by appellant's commanding officer. On 9 August 1995, the District Commander referred them to a special court-martial, and they were ultimately tried by summary court-martial, after the defense counsel successfully negotiated their withdrawal from a special court-martial and their referral to the lower court. Appellant does not challenge the propriety of the charges having been forwarded to the GCM authority or the disposition of them at that level, given the fact that appellant's commanding officer had removed himself from the case. Appellant's complaint is that the GCM authority considered the new charges in conjunction with his action on the instant case, without

informing appellant or counsel that he was doing so and without affording them the opportunity to comment.

The Government responds by saying that the GCM authority's referral of new charges to a court-martial, while post-trial action was pending in this case, is completely proper and is not evidence that the new allegations were considered against the accused. From the Government's perspective, appellant's evidence has not established that the GCM authority, in fact, considered these charges when acting on this case. At best, according to the Government, appellant has presented some evidence suggesting only that the GCM authority had decided to convene a court-martial at about the same time that he took action on this record under R.C.M. 1107. In the Government's view, the GCM authority is presumed to have performed his duties properly and any conclusion to the contrary is belied by affidavits before this Court.

The evidence submitted by appellant consists of affidavits from trial counsel and defense counsel in this case, as well as the charge sheet for the new offenses, the letter from appellant's commanding officer forwarding those charges to Commander, First Coast Guard District, e-mail between the trial counsel for the new charges and a First District personnel officer, a memorandum from that personnel officer relating to the selection of members for the subsequent court-martial, and a letter of 9 August 1995 signed by Commander, First Coast Guard District, convening that special court-martial and listing its members.

This evidence indicates that on the day the GCM authority acted on the instant record the prospective trial counsel for the new charges discussed with the staff personnel officer the need for a list of available potential court members to be compiled by that personnel officer and submitted to the District Commander. That task was accomplished the next day, 1 August 1995, when a list was submitted by memorandum to the Admiral. On the basis of the first sentence of that memorandum, which stated, "As you have decided to convene a court-martial in subject case," the defense has concluded that the GCM authority must have been aware of the new charges and contemplated their referral to a special court-martial when he acted on the instant record the day before.

The affidavits from this case's trial counsel and the personnel officer who signed the 1 August memorandum indicate otherwise. The trial counsel says that he had the charge sheet and letter of transmittal from the appellant's commanding officer mailed to him at his office in the First District and that the charge sheet remained in his office to avoid allegations by defense counsel that new charges were presented to the District Commander to influence him prior to taking action on the instant sentence. The personnel officer's affidavit says that the memorandum to the District Commander is a standard form letter used to forward a list of available personnel to the Commander when requested by the legal office and that this memorandum was prepared in response to conversation with the expected trial counsel as reflected in the e-mail submitted by the defense. The personnel officer says that he did not have any information that the District Commander had decided to convene a court. His memorandum's first sentence was boilerplate language used in all his memoranda and does not indicate that the District Commander had personally made a decision to convene a court-martial or that he knew anything about the case at the time the personnel officer signed the memorandum.

The charge sheet indicates that appellant was informed of the charges on 10 May 1995, but his defense counsel says that she was unaware of the preferral of those charges and their forwarding to the GCM authority until about 11 August when she was detailed as defense counsel for that case. She also says that had she known the GCM authority was contemplating disposition of those charges during the same time frame that he was considering whether or not to grant clemency in the instant case, she would have investigated the matter further and addressed this issue in her response to the staff judge advocate's R.C.M.1106 recommendation, which made no reference to the new charges.

Notification of appellant and counsel, with opportunity to respond, would have been essential if the GCM authority planned to consider the new charges in conjunction with his action on the instant record of trial. There would be no reason for such notification, however, if those charges were not to be considered in this manner. The affidavits convince us that the District Commander was not apprised of the new charges until after he took action on this case and, therefore, did not consider those charges when acting on this record. Accordingly, a requirement to notify counsel and appellant was not triggered. The assignment of error is rejected for that reason.

## II

## THAT THE CONDUCT OF APPELLANT'S COMMANDING OFFICER AFTER TRIAL VIOLATED ARTICLE 37, UCMJ AND WARRANTS ACTION BY THIS COURT

According to an unrebutted defense affidavit, defense counsel accompanied appellant to his ship the day after trial to, in the words of counsel, "pay a courtesy call on the command, assist my client with checkout procedures prior to his transport to the...Brig..., and discuss clemency possibilities with the Commanding Officer." The affidavit goes on to say that, after required paperwork was completed, appellant and his defense counsel were escorted to the commanding officer's stateroom by the executive officer, accompanied by a chief petty officer and two brig escorts. According to counsel, "Upon arriving at the doorway of the stateroom, the Commanding Officer immediately took an offensive posture and belligerent tone, and barked that my client should knock before entering, even though the Executive Officer was behind us telling us to walk into the room." The commanding officer then questioned why the defense counsel was there and counsel explained her desire to ensure proper processing for the brig.

Characterizing this initial exchange as being "dressed down," defense counsel concluded that a clemency discussion was not possible. Further comments by LCDR T. P. Vieten, the commanding officer, tended to support this conclusion, for he next asserted to all present, including the chief who had testified for the defense the previous day, that he thought the sentence was too light and that he believed appellant had lied to counsel and had encouraged her to present false and misleading evidence during the presentencing portion of the trial. There followed an exchange in which the defense counsel let the commanding officer know that she took such an accusation very seriously, was offended by it, and that he should acquire tangible evidence if he intended pursuing that line of reasoning. LCDR Vieten, in turn, said that he was not accusing her of any wrongdoing, merely that she was being used by her client, who

had been lying to her all along. He then turned to appellant and stated that he intended to investigate this matter and if he found enough evidence, he intended to prosecute appellant for perjury and false official statements, after appellant's return from the brig.

At this point, the commanding officer turned to the defense counsel and, from counsel's perspective, attempted to convey to appellant and the others present that she was inexperienced by asking her how many courts-martial she had handled in the past. According to counsel, the commanding officer seemed incredulous that she had any significant experience, asking her how she could have acquired such experience in only three years in the Coast Guard. When she started to detail her background, counsel says he cut her off with a "Be quiet, Lieutenant." According to counsel, LCDR Vieten then turned to appellant to convey his personal dissatisfaction with appellant's behavior, stating that appellant would have to return to the ship after confinement to serve for a long time while his bad conduct discharge was undergoing review and, during that time, he would be very closely observed and would have to work hard. While not completely clear, counsel saw this ostensible counseling of appellant as either resulting from an unawareness of the appellate leave process or as an attempt to chill appellant's exercise of his appellate rights.

Whatever the reason for these comments, LCDR Vieten insisted on handcuffing appellant before he exited the ship. Counsel saw this action more as a display to those on board the cutter, since appellant had never fled or made any violent gestures. Moreover, counsel says that, as she was leaving LCDR Vieten's stateroom, he turned to her and stated "You seem to have so much to say, do you have anything to say now?" Counsel had nothing more to say then, but much to express later in a motion to disqualify the commanding officer from taking further action on the case. As indicated earlier, this motion resulted in the commanding officer voluntarily relinquishing his position as convening authority, upon advice from the government, and forwarding the record to Commander, First Coast Guard District for convening authority action.

At oral argument on the issues previously noted, this Court voiced questions concerning possible ramifications from LCDR Vieten's conduct that had not been assigned as error, particularly, whether the new charges were the result of LCDR Vieten's pursuing prosecution of offenses that he knew about before trial, rather than trying all known offenses at the same time, and whether LCDR Vieten's conduct violated Article 37, UCMJ. Further briefing and assignment of error relating to these matters was permitted and resulted in the additional assigned error that the commanding officer's conduct amounted to unlawful command influence in violation of Article 37, UCMJ. Appellant contends that this Court should remedy and discourage such conduct by reassessing the sentence and approving one that includes no punishment. In making this argument, appellant has first assured us in his brief that the new charges, while occurring before the instant offenses, were not known at the time of trial. Documents that have been filed with the Court also indicate that LCDR Vieten did not initiate the process resulting in these new charges, thus satisfying our earlier concern.

With respect to the asserted violation of Article 37, UCMJ, appellant contends that this provision of the Code was contravened in three different ways. First, that LCDR Vieten's stated dissatisfaction with the severity of the sentence and his questioning of defense counsel's presence aboard his ship, her

experience, and her expertise constituted a violation of the express language of Article 37(a): that no convening authority, "nor any other commanding officer, may censure, reprimand, or admonish the court...or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other of its or his functions in the conduct of the proceedings." As his second assertion, appellant, citing *U.S. v. Stombaugh*, 40 M.J. 208 (CMA 1994), says that interfering with court-martial witnesses is similarly forbidden. He contends that LCDR Vieten's comments, made in the presence of a chief who had testified as a witness for the defense, appears to be an attempt to discourage that chief and any other crew members who may have been so inclined from doing anything further for appellant. Lastly, appellant submits that LCDR Vieten's forwarding of the new charges to the district commander, while action was pending in this case, could be viewed as an attempt to influence the convening authority's action, in violation of Article 37(a), if that was the intent in submitting these charges, since Article 37(a) bars persons who are subject to the Code from attempting, "by any unauthorized means," to influence the action of any convening authority

With regard to appellant's last contention, we question whether forwarding of legitimate sworn charges pursuant to UCMJ and MCM requirements would ever amount to a violation of Article 37(a), even if done with an intent to affect the convening authority's action on another case. In any event, such an intent has not been demonstrated by the evidence. Accordingly, we find no merit in this assertion. As to the claim that LCDR Vieten's conduct in the presence of the chief, who had testified for the appellant the previous day, violated a prohibition against interfering with court-martial witnesses, we are similarly unpersuaded. Certainly, LCDR Vieten's treatment of counsel and accused are to be condemned as ill-befitting an impartial convening authority. For that reason, the motion to disqualify him from acting further in the case was well justified, as was his voluntarily taking this step. Whether his conduct rose to the level of attempting to interfere with a witness is another matter, however, which has not been established by the evidence. First, the chief had already testified for appellant at his trial the day before and, according to the Government, also testified in this manner at appellant's subsequent summary-court martial on the new charges. Furthermore, there is no assertion or any indication in the record that further statements were desired from the chief to be submitted in support of clemency action by the convening authority. In short, there is no evidence that LCDR Vieten's actions inhibited the chief or any other crew member from presenting testimony or statements in appellant's behalf nor is there evidence that LCDR Vieten intended to inhibit such witnesses. This aspect of the assigned error is also rejected.

The remaining contention is that LCDR Vieten violated Article 37(a), UCMJ, by censuring counsel for her representation of appellant. We agree that the unchallenged account of LCDR Vieten's treatment of counsel in the presence of appellant and others certainly amounted to censure for the manner in which she represented appellant at trial, particularly with regard to the sentence, which LCDR Vieten decried as too light. Such conduct violated the express terms of Article 37(a) and warranted LCDR Vieten's removal as convening authority. Whether other corrective action is now required, however, depends on the effect of that conduct. We see no indication whatsoever from this record that defense counsel's further representation of appellant was adversely affected. She promptly took action to have the commanding officer removed as convening authority, and she fulfilled her other post-trial responsibilities in an exemplary fashion, submitting an extensive petition for clemency to the substitute convening authority. She even represented appellant with respect to the subsequent charges that were

filed and successfully had the forum reduced from a special court to a summary court-martial. Clearly, appellant's representation was not diminished by the actions of his commanding officer. Moreover, the record reveals no other prejudice to appellant from LCDR Vieten's conduct that would call for sentence or findings modification. Accordingly, appellant's Assignment of Error II is rejected in its entirety. Having said that, however, we must emphasize to all Coast Guard commanding officers that conduct of the kind encountered here is not only unbecoming a commanding officer, but also constitutes a rebuke of counsel in the performance of defense counsel duties, in violation of Article 37 of the UCMJ, and, therefore, must be avoided at all times

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and on the basis of the entire record should be approved. Accordingly, the findings of guilty and sentence, as approved below, are affirmed.

Judge Fearnow concurs.

O'Hara, Judge (dissenting):

I disagree with the lead opinion with respect to the first assigned error. The crux of the matter from my perspective is whether the GCM authority was aware of the pending new charges when he acted on this case, particularly in light of the defense clemency petition which was written by a defense counsel who was unaware of the pending new charges. Neither the government nor defense has directly addressed this fact. We are presented with affidavits from other participants, but nothing from the GCM authority. While I am willing to accept the evidence of others on whether or not materials were in fact given to officials when they acted on a court-martial conviction, *U.S. v. Garcia*, 44 MJ 748 (C.G.Ct.Crim.App. 1996), I am not inclined to do so with respect to the extent of that official's knowledge, or lack thereof, of activities ongoing within the official's command, which may have a bearing on what post-trial action is taken. The fact that the transmittal letter for the new charges and the charge sheet were withheld from the GCM authority here until he acted on the record does not mean that the information had not already reached him by other means. To remove any doubt in this regard, I would remand the case to the GCM authority for a new post-trial action. In doing so, I would also suggest that the GCM authority may want to address on the record the unrebutted Article 37 (a) violation, discussed in the lead opinion.

For the Court,

R. Hamish Waugh
Clerk of the Court