# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
**Washington, DC**

## UNITED STATES
**v.**
**Frank J. DIRE**
**Seaman Apprentice, U.S. Coast Guard**

**CGCMS 24125**
**Docket No. 1077**

**12 June 1997**

Special Court-Martial convened by Commanding Officer, Coast Guard Support Center Alameda. Tried at Alameda, California, on 22 May 1996.

| | |
|---|---|
| Military Judge: | CDR Michael J. Devine, USCG |
| Trial Counsel: | LT Benes Z. Aldana, USCGR |
| Detailed Defense Counsel: | LT A. L. DiGiulio, JAGC, USNR |
| Appellate Defense Counsel: | LT Richard R. Beyer, USCGR |
| Appellate Government Counsel: | LT Frank R. Levi, USCGR |
| Appellate Government Counsel: | LT William G. Rospars, USCG |

**BEFORE**
**PANEL FOUR**
**BAUM, O'HARA, AND WESTON**
Appellate Military Judges

WESTON, Judge:

Appellant was tried by a special court-martial comprised of a military judge. Convicted according to his pleas of six specified violations of Article 112a, UCMJ, appellant was sentenced to a bad conduct discharge, three months confinement, forfeiture of two thirds pay per month for three months, and reduction in pay grade from E-2 to E-1. In accordance with a pretrial agreement, the convening authority approved the sentence, except confinement exceeding 60 days was suspended for a period of 12 months.

Appellant has assigned two errors before this Court. His first claim of error is that he was deprived of a fair sentencing hearing by virtue of the trial counsel's introduction into evidence of a prior non-judicial punishment (NJP) at sentencing and by the military judge's failure to credit the NJP against the sentence. The second assigned error is a claim that this Court lacks jurisdiction to consider appellant's case due to the service of a civilian judge who has not been appointed in accordance with the Appointments Clause of the U.S. Constitution. Article II, §2, cl.2. This second claim of error was conclusively resolved by the Supreme Court in *Edmond v. United States*, ___U.S.___, 65 U.S.L.W. 4362 (1997), and it is accordingly rejected without further discussion.

I.
THE FACTS

This is one of several similar cases which arose from illegal drug use by crew members of a Coast Guard cutter. On 3 October 1995, appellant was awarded NJP by his ship's Commanding Officer under Article 15, UCMJ, for two violations of Article 112a: the wrongful use of marijuana at Kodiak, Alaska, on or about 5-8 July 1995, and the wrongful use of lysergic acid dimethylamide (LSD) at San Francisco, California, on 25-28 August 1995. The Commanding Officer ordered appellant to forfeit $100.00 pay per month for one month and to be reduced one pay grade to E-2. Appellant was transferred ashore to the Integrated Support Command (ISC) in Alameda, California, presumably pending processing for an administrative discharge from active duty-the usual result of a finding that a service member has used illicit drugs.

Two specifications that had been the subject of the earlier NJP, together with eight specifications of additional violations of Article 112a, were referred by the Commanding Officer of ISC Alameda to a special court martial. Pursuant to a pretrial agreement, appellant pleaded guilty to six specifications of Article 112a (with exceptions and substitutions). The convening authority withdrew four specifications to which appellant pleaded not guilty. One of the six specified violations of Article 112a for which appellant was found guilty had been the subject of the earlier NJP. Four of the remaining specified violations concerned the possession, use, introduction, and distribution of LSD while assigned to ISC Alameda and occurred four days following the imposition of NJP at his prior unit. The last specified violation concerned the use of marijuana in the previous year

During the sentencing phase of the court-martial, trial counsel introduced seven documents from the appellant's service record, one of which was a page from appellant's service record containing summary information about the earlier NJP. (PE #3). The NJP covered both earlier 1995 uses of marijuana and LSD; the defendant pleaded guilty to only the latter offense. Three other service record documents also alluded to the NJP. Defense counsel affirmatively stated on the record, "No objection, Your Honor, to those exhibits . . . ." (R. at 39) Neither counsel nor the military judge discussed how Article 15(f), UCMJ, or *U.S. v. Pierce*, 27 M.J. 367 (CMA 1989), might apply to the introduction of these documents.

The appellant made an unsworn statement (R. at 40-42) in which he stated he had been involved with the "wrong crowd" on ship and that he had been sent to "Captain's Mast" (NJP) for using marijuana and

LSD. Trial counsel later argued that because appellant repeated his violation of Article 112a after receiving NJP, he deserved a heavier punishment. The defense counsel also made note of the prior NJP in his argument on sentence, but as a factor meriting leniency.

The military judge did not indicate at trial how he considered the prior NJP in determining an appropriate sentence. As already noted, the military judge sentenced appellant to a bad conduct discharge, three months confinement, forfeiture of two-thirds pay per month for three months and reduction to pay grade E-1. As required by the sentence limitation in the pretrial agreement, the convening authority approved the sentence, except that confinement in excess of 60 days was suspended for 12 months. Neither the military judge nor the convening authority addressed applying a credit to appellant's sentenced punishment to offset the prior NJP.

II.
TRIAL BY COURT-MARTIAL AFTER NJP

Article 15(f) of the UCMJ states,

> "The imposition and enforcement of disciplinary punishment under this article for any act or omission is not a bar to trial by court-martial for a serious crime or offense growing out of the same act or omission, . . . but the fact that a disciplinary punishment has been enforced may be shown by the accused upon trial, and when so shown shall be considered in determining the measure of punishment to be adjudged in the event of a finding of guilty."

This Article allows the subsequent trial by court-martial for the same serious misconduct which has been the basis for imposing NJP and, absent bad faith on the Government's part, it is not a violation of due process. *U.S. v. Pierce*, 27 M.J. 367, 369 (CMA 1989). In those rare instances in which the same conduct is subjected to both NJP and court-martial, Article 15 requires the "consideration" of the prior NJP when an accused brings it to the trial court's attention. As a practical matter this allows an accused the opportunity to ameliorate the severity of a judicial sentence by highlighting the fact that he or she has already been punished nonjudicially for the same misconduct.

Although it was not necessary to deciding the issues presented in *Pierce*, the majority opinion (there was one concurring opinion) states that a prior NJP concerning the same misconduct before a court "may not be used for *any* purpose at trial," by the prosecution. *Pierce* at 369 (emphasis in original). This strong condemnation seems to have been aimed at foreclosing the potential for misuse of a prior NJP proceeding to persuade a factfinder at trial of an accused's guilt or as a means of attacking the accused's character or credibility. *Pierce* at 369 [citing Mil. R. Evid. 404(b), Manual for Courts-Martial, United States, 1984]. Misuse of a prior NJP in that manner would undercut confidence in the reliability of the results of a court-martial, potentially converting the verdict into a mere affirmation of a Commander's judgment about the charged misconduct. *Pierce* clearly telegraphed that such exploitation of a prior NJP would not be countenanced.

The *Pierce* opinion at one point declares that a prior NJP has "no legal relevance to the court-martial." *Pierce* at 369. However, we are not convinced this dicta means that Court would conclude evidence of a prior NJP introduced during the <u>sentencing</u> phase of a trial to show the recidivism of an accused is not relevant. When an accused has committed <u>additional</u>, similar offenses <u>after</u> receiving nonjudicial punishment, the prior NJP seems relevant to the determination of an appropriate sentence as a matter relating to the accused's rehabilitative potential. *See* RCM 1001(b)(2), Manual for Courts-Martial, United States, 1995; *see also U.S. v. Zamberlan,* 45 M.J. 491, 493 (1997). Moreover, in this case the prior NJP also dealt with a use of marijuana, which was not covered by the charges taken to trial. Hence, a redacted record of the prior NJP would have been properly received into evidence at sentencing for the purpose of showing the character of appellant's prior service under RCM 1001(b)(2). We think that the *Pierce* Court, on these facts, would permit trial counsel to introduce at sentencing this evidence for the limited purpose of demonstrating an accused's recidivism. Notwithstanding that conjecture, we need not decide this case on that basis.

### III.
### AFFIRMATIVE WAIVER

Defense counsel stated at trial that appellant had "no objection" to the admission of service record documents that made reference to the prior NJP. Although the introduction of that documentary evidence preceded the appellant's unsworn statement discussing the prior NJP, allowing the entry of that evidence was consistent with the Defense's tactical choice to raise the prior NJP as a matter in mitigation. In any case, the failure to assert an objection to this evidence waives it. RCM 1001(b)(2), Manual for Courts-Martial, United States, 1995; *see also U.S. v. Hamilton*, 36 M.J. 723, 731 (ACMR 1992); *U.S. v. Hall*, 36 M.J. 770, 772 (NMCMR 1992).

Article 15(f) required the military judge to consider the appellant's prior NJP after its having been "shown" by the accused to have been enforced. Although not the only way to make such a showing, the service record entries to which defense counsel did not object together with the appellant's unsworn statement certainly accomplished this end. We are confident that the military judge did, in fact, give this prior punishment consideration in arriving at his determination of a just sentence. The evidence of the prior NJP properly served as both a mitigating factor and as a matter in aggravation in the determination of a just sentence in this case. *See Zamberlan, supra*.

In summary, we hold that defense counsel affirmatively waived any error which arose from the introduction of the prosecution's documentary exhibits and trial counsel's argument drawing attention to the accused's prior NJP. In any case, such error-if it is error-was harmless here. The appellant raised, and defense counsel relied upon, the same prior NJP in pursuit of a lighter sentence than might otherwise have been adjudged. Appellant should not now complain that trial counsel's introduction of this information unfairly "exploited" the prior NJP.

### IV.
### SENTENCE ADJUSTMENT

However, in the absence of evidence that the NJP punishment had already been administratively restored, we agree with the conclusion posed in the alternative by the appellant-that under the circumstances the sentence should be adjusted to remove any doubt about credit for the prior NJP. In *Pierce*, the then Court of Military of Appeals held that the appropriate response in these circumstances was, "to either: (1) ascertain from the judge an explanation of what his consideration of the non-judicial punishment implied; or (2) adjust appellant's sentence to assure that he was not twice punished." *Pierce* at 370.

Considering the seriousness and repeated nature of the misconduct involved here, the sentence adjudged was fully merited and even reflected considerable leniency. We suspect that the military judge accounted for the prior NJP by reducing somewhat the sentence he would otherwise have adjudged. However, since the military judge did not indicate on the record that he had reduced the sentence to offset the prior NJP (s*ee Hall* at 773*; U.S. v. Flynn*, 39 M.J. 774, 775 (ACMR 1994)), and since the convening authority did not address credit for appellant's previous NJP in his action on the sentence, we shall do so.

Before adjusting the sentence, we note that RCM 1003(b)(2) requires a sentenced forfeiture of pay to state an exact amount in whole dollars per month and the number of months it applies. Where a reduction in grade is also involved, forfeitures are based on the reduced grade. Here the military judge announced the sentenced forfeiture as a fraction: "forfeiture of 2/3 pay per month for three months." Based upon the then current E-1 base pay of $874.80 per month, this equaled a forfeiture of $583.00 per month. Accordingly, we have used this amount as the basis for adjusting the sentence under *Pierce.*

We have reviewed the record in accordance with Article 66, UCMJ, and have determined the findings to be correct in law and fact, and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty are affirmed. The sentence, as approved and partially suspended below, must be modified to conform with both the requirements of RCM 1003(b)(2) and the requirement of *U.S. v. Pierce* for crediting the prior NJP. Accordingly, only so much of the sentence approved below as provides for a bad conduct discharge, confinement for three months, with confinement in excess of 60 days suspended for 12 months from the date sentence was adjudged, and forfeiture of pay for three months in the amount of $483 for the first month and $583 per month for the remaining two months is affirmed. By this action, the reduction in pay grade from E-2 to E-1 and $100.00 of the previously approved forfeiture of pay have been set aside. All rights, privileges, and property of which appellant has been deprived by virtue of the portion of the sentence that has been set aside will be restored.

Judge O'HARA concurs.

BAUM, Chief Judge (dissenting):

I disagree with the majority opinion because I believe it is contrary to controlling case law on the subject. In *U.S. v. Pierce*, 27 M.J. 367 (CMA 1989), the then Court of Military Appeals ruled that, while the Uniform Code of Military Justice (UCMJ) permits a court-martial for serious offenses which have

already been the basis for nonjudicial punishment (NJP) under Article 15, UCMJ, it is essential that this process not result in a second punishment for the same offenses or result in some other adverse use of the prior punishment. Speaking for the Court, then Judge Cox addressed the issue in the following manner:

> It does not follow that a service member can be twice *punished* for the same offense or that the *fact* of a prior nonjudicial punishment can be exploited by the prosecution at a court-martial for the same conduct. Either consequence would violate the most obvious, fundamental notions of due process of law. Thus, in these rare cases [where there is a court-martial after NJP for the same offense], an accused must be given *complete* credit for any and all nonjudicial punishment suffered: day-for-day, dollar-for dollar, stripe-for stripe. Furthermore, the nonjudicial punishment may not be used for *any* purpose at trial, such as impeachment (even of an accused who asserts he had no prior misconduct); to show that an accused has a bad service record; or any other evidentiary purpose, *e.g.*, Mil. R. Evid. 404(b) Manual, *supra.* Under these circumstances, the nonjudicial punishment simply has no legal relevance to the court-martial.

*Id*. at 369 (footnote omitted).

I believe Judge Cox meant what he said. The Government simply may not use the prior NJP for any purpose at all after an accused has been convicted at court-martial for the same offense. *Obiter dictum* or not, there is ample reason for the rule. It ensures due process for an accused who is unable to plead double jeopardy. As Judge Cox pointed out in *Pierce*, the Code provision dealing with former jeopardy, Article 44, UCMJ, does not, by its terms, apply to nonjudicial punishments. Given this fact, *Pierce* protects an accused against further use of that prior punishment by the Government, after conviction for the same offense. In short, when the Government decides to obtain a court-martial conviction for the same offense that prompted punishment under Article 15, UCMJ, that prior punishment should be treated as wiped from the books for Government purposes. At that point, under the terms of Article 15 (f), UCMJ, only the accused may show the prior punishment at trial. For me, any possible doubt as to the meaning of *Pierce* is dispelled by the following footnote to the previous quote from the case:

> It may well be a violation of military due process for military authorities to use this record of nonjudicial punishment for *any purpose at all*, including administrative, once a criminal conviction has been obtained for the same offense. Our review is confined to the appeal of court-martial "cases." Art. 67(b), UCMJ, 10 U.S.C. § 867(b). Accordingly, our holdings with respect to this nonjudicial punishment are limited to the extent it impacted on the case before us. We trust that appropriate military authorities will take whatever action may be required with respect to this record of nonjudicial punishment itself. Indeed, we have no idea whether this document is still purported to exist or whether it has been rescinded.

*Id*. at 369, n.4

In the case before us, personnel associated with the court-martial and its review by the convening authority appear either to have been unaware of *U.S. v. Pierce, supra,* forgot it, or chose to ignore it, because *Pierce* was neither mentioned nor followed in any respect. The trial counsel presented evidence of the prior NJP at sentencing in four different exhibits, as noted in the majority opinion, and he subsequently exploited this evidence in argument on the sentence, without objection at either point by the defense and without comment by the military judge. Moreover, neither the judge nor the convening authority gave any indication that credit was applied for the prior punishment. The day-for-day, dollar-for-dollar, stripe-for-stripe credit envisioned by *Pierce*, clearly, was not given. Judge Weston sees the defense counsel's failure to object at trial and subsequent reference to the NJP by the appellant and defense counsel as constituting affirmative waiver of any error by the trial counsel or the judge. Waiver has not been applied by him, however, to the convening authority's error in not crediting the prior punishment against the sentence, despite the defense counsel's failure to raise the matter in a response to the staff judge advocate's recommendation or in a clemency petition.

I would not apply the waiver rule to either the trial errors or the post-trial failings. In my view, plain error was committed at both stages, and I would take corrective action at this level. Under no circumstances would I treat appellant's unsworn statement at trial and defense counsel's sentence argument as indicating affirmative waiver, or a knowing forfeiture of objection to the errors committed by the trial counsel and the judge. Since a due process question inheres in any trial on charges for which the accused has been previously punished, I would require an explanation by the judge to the accused of his rights under *Pierce* and an assurance from the accused that failure to object to evidence and use of that prior NJP by the Government constitutes a knowing relinquishment of a right, before I would apply waiver. Moreover, in addition to the crediting of Article 15 punishment of $100 forfeiture and reduction from E-2 to E-1, which the majority has applied, I would either reassess the sentence for further reduction or return the record for a rehearing on the sentence. For all of these reasons I dissent from the majority opinion and disposition.

For the Court

R. Hamish Waugh
Clerk of the Court