# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, DC

## UNITED STATES
### v.

## Michael J. REES

## Seaman Apprentice, U.S. Coast Guard

## CGCMS 24119
## Docket No. 1069
## 28 October 1998

Special Court-Martial convened by Commanding Officer, Coast Guard Integrated Support Command Alameda. Tried at Maintenance and Logistics Command Pacific, Alameda, California, on 2 April 1996.

| | |
|---|---|
| Military Judge | LCDR William J. Shelton, USCGR |
| Trial Counsel | LT Benes Z. Aldana, USCGR |
| Detailed Defense Counsel | LT John S. Han, JAGC, USNR |
| Appellate Defense Counsel | LT Richard R. Beyer, USCGR |
| Appellate Government Counsel | LT Frank R. Levi, USCGR |
| Appellate Government Counsel | LT William G. Rospars, USCG |

## BEFORE
## PANEL FIVE

## BAUM, WESTON, AND WESTON
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by special court-martial, judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, he was convicted of one specification of wrongful use of marijuana and one specification of wrongful use of LSD, both in violation of Article 112a of the Uniform Code of Military Justice (UCMJ), 10 USC §912a. The judge sentenced appellant to a bad conduct discharge, confinement for sixty days, forfeiture of $100 per month for six months, and reduction to pay grade E-1. The convening authority approved the sentence as adjudged, but, in accordance with the pretrial agreement, suspended confinement in excess of 30 days.

Before this Court, Appellant has assigned five errors: (1) that the military judge s inquiry into the providence of Appellant s guilty plea to wrongful use of marijuana failed to provide the requisite factual basis for a guilty finding; (2) that Appellant was deprived of due process by trial counsel s exploitation of prior nonjudicial punishment for the marijuana offense and by the failure of the military judge and the convening authority to credit that prior punishment against the court-martial sentence; (3) that the convening authority failed to indicate in the record that he had considered Appellant s clemency matters before taking action on the sentence; (4) that this Court lacks jurisdiction because of an improper judicial appointment; and (5) that money withheld from Appellant pursuant solely to Articles 57(a) and 58b, UCMJ, must be returned because of *ex post facto* application of those Articles.

The last two assignments of error have been resolved by decisions of the U.S. Supreme Court and the U.S. Court of Appeals for the Armed Forces. *Edmond v. United States,* 520 U.S. 651, 117 S.Ct. 1573 (1997) determined that this Court s judicial appointments are proper, and assignment of error (4) is rejected for this reason. With respect to assignment (5), *U.S. v. Gorski*, 47 M.J. 370 (1997) found *ex post facto* application of Articles 57(a) and 58b, UCMJ under circumstances similar to those in this case. Accordingly, as we did in *U.S. v. Collova*, 47 M.J. 829 (C.G.Ct.Crim.App. 1998), we will order the return of all money withheld pursuant solely to application of Articles 57(a) and 58b, UCMJ. With respect to assignment of error (3), Appellant has not brought forward any basis to conclude that the convening authority ignored the clemency request. Moreover, an affidavit from the staff judge advocate convinces us that the convening authority considered Appellant s clemency submission before acting on the sentence. Accordingly, the assignment is rejected. Assignments (1) and (2) will be addressed.

## Adequacy of the Plea Providence Inquiry

Citing *U.S. v. Davenport*, 9 M.J. 364 (CMA 1980), Appellant submits that a guilty plea should not be accepted unless an accused provides objective facts to support his belief that he is guilty. Appellant contends that the military judge s inquiry with regard to the offense of wrongful use of marijuana failed to develop these necessary objective facts. He cites two specific deficiencies in the judge s inquiry: failure to establish that Appellant ingested the alleged marijuana, and failure to establish by objective facts that the substance was marijuana. After explaining the elements of the marijuana offense, the judge s entire inquiry into that offense was as follows:

> MJ: Do you want to tell me what you did on that date, that makes you think that these elements have all been met?
>
> Acc: Yes sir. I stopped--we had duty weekend, we got off of duty weekend 7 o clock, 0700 that morning, on Monday morning. We got off early, I d say about 1200. Me and Seaman Glassman and Seaman Grenon, went--I dropped Seaman Grenon off at his truck. We--me and Seaman Glassman and

Seaman Grenon went over to Seaman Glassman s house, had lunch. Drank a couple--had a couple beers with lunch and I was outside, when I came in Seaman Glassman and Seaman Grenon were standing by the counter they both--well excuse me, they didn t both have a rolled up cigarette of marijuana with them at the same time. But, they had rolled one, we went upstairs to Seaman Glassman s bedroom, sat in his bedroom and passed it around between the three of us. After that one I left and that was it, sir.

MJ: Did you know at that time that it was in fact, marijuana?

Acc: Yes, sir.

MJ: Did anyone force you, coerce you, to participate?

Acc: No, sir.

Record at 15-16.

Appellant correctly points out that he never actually told the judge that he smoked the marijuana cigarette or ingested it in some other fashion, only that it was passed around. Furthermore, he notes that objective facts describing the cigarette and its effects, that might identify it as marijuana, are also missing. Only Appellant s statement that he knew the substance was marijuana was elicited by the judge, without some explanation as to how he knew it was marijuana. Appellant contends that his belief in the nature of the substance alone, without facts to support that belief, is not enough to satisfy the requirement for a factual basis to support his conclusion that it was marijuana. He cites to Article 45, UCMJ, R.C.M. 910(e), and *U. S. v. Davenport,* supra, in support of this argument.

Appellant is right in the sense that the military judge must be satisfied that there is a factual basis for the plea, but the exact parameters of that requirement are not so clear. Ideally, the judge would have asked Appellant what he meant by the statement that the cigarette was passed around. Appellant could have been required to state explicitly whether or not he smoked the cigarette when it was passed to him, and whether he inhaled the smoke. Moreover, the judge could have asked Appellant how he knew the substance in the cigarette was marijuana. Were there test results of some kind indicating that it was marijuana? If not, what was the description of the substance and what effects, if any, were felt by Appellant? The answers to such questions possibly could have provided objective independent facts establishing the offense. Does the failure to develop such facts in the record, however, require an appellate court to set aside an otherwise uncontradicted guilty plea and finding, absent some statement or evidence in the record that substantially conflicts with the plea? We think not, in light of our higher Court s opinions requiring a substantial conflict between the plea and the accused s statements or other evidence in order to find the plea improvident. *U.S. v. Peterson*, 47 M.J. 231 (1997), *U.S. v. Garcia*, 44 M.

J. 496 (1996).

There is nothing in this record that conflicts with Appellant s statement that he knew the substance was marijuana. Furthermore, the act of sharing a marijuana cigarette by passing it around for each person to take a puff is such a generally known common practice, that it would allow a judge to interpret Appellant s statement as meaning that he and the other two people smoked the cigarette when it was passed to them. Absent something in the record to indicate otherwise, we, too, can accept that meaning. Furthermore, while passing around a "joint" may commonly occur with marijuana, such is normally not the case with tobacco. It would be unusual today for three people to share a tobacco cigarette in this manner. For that reason, Appellant s statement that the cigarette was passed around is some evidence that, rather than lawful tobacco, the cigarette contained marijuana, or some other unlawful substance.

Appellant s guilty plea was supported by an inquiry, which included an explanation of the elements of the offense by the judge, acknowledgement by Appellant that those elements accurately depicted his actions, and a factual account, though abbreviated, as recounted above, that described Appellant s conduct. We find that this inquiry met minimal requirements to support a guilty finding. Accordingly, the assignment of error is rejected. We strongly recommend, however, that trial judges elicit more detailed explicit facts to support guilty pleas. Without a better factual development than the one presented here, post trial assertions of innocence, or evidence in the record conflicting with guilt, may cause a determination at the appellate level that the plea was improvident.

**Government Use of the Prior Nonjudicial Punishment**

Appellant asserts that he was deprived of due process of law by the trial counsel s exploitation of a prior nonjudicial punishment for one of the offenses before the court and by the failure of the military judge and the convening authority to credit that punishment against the court-martial sentence. As previously indicated, Appellant had received nonjudicial punishment for marijuana use prior to this trial for the same offense. For me, as explained in *U.S. v. Gammons*, 48 M.J. 762 (C.G.Ct.Crim.App. 1998), a trial such as this one raises double jeopardy questions that appear to be controlled by Supreme Court decisions on this subject. See *Hudson v. United States*, 522 U.S.__, 118 S.Ct. 488 (1997) and cases cited therein. However, as also expressed in *Gammons*, 48 M.J. 764, until such time as our higher court revisits this issue, we must follow the holding in *U.S. v. Pierce,* 27 M.J. 367 (CMA 1989), that double jeopardy considerations do not bar a subsequent trial for a serious offense which has been the subject of nonjudicial punishment. At the same time, in following *U.S. v. Pierce*, we must ensure that the Government strictly adheres to that case s other requirements aimed at preventing imposition of double punishment and exploitation by the prosecution of prior nonjudicial punishment.

At the point in this trial when the Government was allowed to present matters bearing on the sentence, trial counsel offered in evidence, among other things, two exhibits that referred to Appellant s prior nonjudicial punishment. One was a page seven from Appellant s service record reflecting the assignment

on 3 October 1995 of enlisted performance evaluation marks of 2 in each of the areas of Integrity, Loyalty, Responsibility, and Setting an Example, due to an "award of non-judicial punishment for the use of illegal drugs." (Prosc. Ex. 4). The other page seven presented an adverse administrative remarks entry for an unsatisfactory conduct mark received during the same "CO s NJP on 95OCT03." (Prosc. Ex. 5). It also indicated that Appellant s period of eligibility for a Coast Guard Award terminated on that date and that a new period of eligibility commenced on 4 October 1995. While each of these exhibits referred to a Captain s Mast, they did not, on their face, alert the judge that the Mast was for the Court s marijuana offense. Defense counsel certainly knew that the trial and Captain s Mast were for the same offense, but, nevertheless, did not object to trial counsel s introduction of evidence showing the prior punishment and its attendant adverse administrative consequences, despite the explicit prohibition against the Government s using such nonjudicial punishment "for *any* purpose at trial." *U.S. v. Pierce* at 27 M.J. 369. With no objection from the defense, the military judge admitted the exhibits.

Subsequently, during the extenuation and mitigation phase of trial, defense counsel offered in evidence a document that set forth the details of that nonjudicial punishment. (Defense Ex. N). It revealed that on 3 October 1995 Appellant was awarded $50 forfeiture of pay per month for one month and reduction of one pay grade to E-2 for wrongful use of marijuana on 11 September 1995 at or near San Leandro, California. These details clearly showed that the nonjudicial punishment and court-martial were for the same offense. Moreover, defense counsel in argument on the sentence pointed to the fact that the Captain s Mast was for the marijuana use in specification 1 and that Appellant, as a result of the reduction in pay grade, had been losing close to $100 per month for six months, for a total loss of pay from the nonjudicial punishment of $650. Accordingly, counsel argued that Appellant "has already been punished for the first specification." Record at 53. He did not go on, however, to state that *U.S. v. Pierce,* supra, barred the imposition of double punishment in such instances and that "day-for-day, dollar-for- dollar, stripe-for-stripe" credit was required by that case. *Id* at 27 M.J. 369.

Furthermore, trial counsel was the first one to argue on sentence, and in doing so alluded to the prior Mast, but the defense counsel did not object to that reference as violating the *Pierce* injunction against exploitation by the prosecution of a prior nonjudicial punishment for the same offense. *Id* at 369. Trial counsel had argued as follows:

> Your honor, the accused was given a chance from being taking [sic] to court-martial as a result from [sic] his marijuana use. As you can tell from Prosecution Exhibits[,] he was counseled a number of times of [sic] his drug use and had been given warnings that even accompanied his marks. Instead of learning from this experience, and doing the right thing, he decided to continue to disregard the law. He decided to use LSD with his friends just outside this base, Coast Guard Island."

Record at 51.

After hearing these arguments on sentence, the military judge asked both counsel whether the prior nonjudicial punishment placed a limitation on the punishment that could be adjudged by the court.

Neither counsel saw the prior punishment as limiting the court. Defense counsel stated specifically that, " [i]t is not a limitation on imposition of sentencing [sic] [or] on the form of punishment, but, it is definitely a mitigating factor." Record at 54.

The answers from counsel do not reflect an awareness of *Pierce.* Furthermore, the judge s question, coupled with his failure at sentencing to signify that he had given the requisite crediting for the prior punishment, showed that he, too, failed to take *Pierce* into account. Under similar circumstances in *U.S. v. Dire*, 46 M.J. 804 (C.G.Ct.Crim.App. 1997) and *U.S. v. Gammons*, 47 M.J. 766, 768 (C.G.Ct.Crim.App. 1997) *reaffd on recons*. 48 M.J. 762 (C.G.Ct.Crim.App. 1997), this Court took different corrective steps. In *Dire*, errors were deemed waived, but credit for nonjudicial punishment was given. In *Gammons*, waiver was not applied and a sentence rehearing was ordered to correct the prejudicial errors. In the instant case, Judge Weston and I agree that it is clear from defense counsel s statements on the record that he was not cognizant of the accused s rights under *U.S. v. Pierce*, supra. Thus, we have each concluded that it would not be appropriate to apply waiver in this case. *U.S. v. Claxton*, 32 M.J. 159, 162 (CMA 1991).

A clemency petition filed by the defense counsel with the convening authority after trial confirms his lack of awareness of *Pierce.* Instead of pointing out to the convening authority that, in the absence of the judge s explicit crediting of the Mast punishment, the convening authority was required by *Pierce* to give complete credit for all nonjudicial punishment, counsel simply asked for clemency in the form of probationary suspension of the sentence. The "day-for-day, dollar-for-dollar, stripe-for-stripe" crediting requirement of *Pierce* at 27 M.J. 369 necessitated disapproval of the reduction to E-1 and at least $50 of the adjudged forfeitures, if not the full $650 that counsel argued at trial was lost because of the Mast. A request for sentence suspension, instead of the required disapprovals, establishes with certainty the defense counsel s lack of knowledge of *Pierce.*

Given our agreement that the Appellant s claim of error by the Government in its use of the nonjudicial punishment at trial has not been waived, the next step is to determine the appropriate corrective action for these errors. This Court s *en banc* decision in *Gammons*, supra, determined that a rehearing on the sentence was required to correct the errors. Accordingly, we will take that action. In so doing, we avoid what may be insurmountable problems in applying the concept of crediting prior punishment against a court-martial sentence.

Can it truly be said that crediting a prior Mast punishment frees the accused from being punished twice? How, for example, would such crediting be accomplished when an accused has been reduced in grade as part of the Mast punishment under Article 15, UCMJ, but the court-martial sentence does not include reduction? That was the situation in *Gammons* where the accused was reduced to E-1 under Article 15, UCMJ. If this Court had not ordered a sentence rehearing in that case, what could the E-1 reduction have been credited against? Would crediting the Mast reduction against a forfeiture of pay or confinement enable a court to say that there has not been double punishment? What about the situation we have here of lowered marks and a termination of award eligibility, which were the direct consequence of a Captain s Mast. Does that action need to be credited, and, if so, how is that to be done? What about trial defense

counsel s argument that Appellant has suffered a $600 loss of pay from the nonjudicial punishment? Should Appellant be credited with the $600 he says he lost as a result of his reduction at Mast? If so, is that money to be set off against adjudged forfeitures? What if Appellant was sent home on appellate leave after serving his 30 days confinement and stopped earning pay at that point? How, then, would the $600 be credited?

I do not know the answers to the foregoing questions, just as I did not know in *Gammons* how to credit the reduction to E-1 against a court-martial sentence that did not include reduction. A rehearing on sentence was ordered, instead. In consonance with our action in *Gammons*, a sentence rehearing will be ordered here also to cure the errors, rather than attempting to remove the prejudicial taint through sentence reassessment and crediting. As a further corrective step in *Gammons,* this Court ordered the nonjudicial punishment voided and expunged from the accused s record. *Id*. at 48 M.J. 762. We saw this step as warranted by Article 15, UCMJ, which limits nonjudicial punishment to minor offenses. That provision of the UCMJ authorizes a court-martial, after nonjudicial punishment has been imposed, only if the offense on which the punishment was based is a serious crime, "and not properly punishable under this article." We said that if serious crimes are not properly punishable under Article 15, then punishment for such offenses should be ruled void upon confirmation of their serious nature by a referral and conviction at court-martial. As a corollary, R.C.M. 907(b)(2)(D)(iv) indicates that prosecution is barred by prior punishment under Article 15, UCMJ, for a minor offense. A charge that is barred for this reason shall be dismissed upon motion by the accused before final adjournment of a court-martial. In determining whether an offense shall be characterized as minor, paragraph 1e, Part V, MCM 1995, has the following to say:

> Whether an offense is minor depends on several factors: the nature of the offense and the circumstances surrounding its commission; the offender s age, rank, duty assignment, record and experience; and the maximum sentence imposable for the offense if tried by general court-martial. Ordinarily, a minor offense is an offense which the maximum sentence imposable would not include a dishonorable discharge or confinement for longer than I year if tried by general court-martial. The decision whether an offense is "minor" is a matter of discretion for the commander imposing nonjudicial punishment, but nonjudicial punishment for an offense other than a minor offense (even though thought by the commander to be minor) is not a bar to trial by court-martial for the same offense.

While Paragraph 37e(1)(b), Part IV, MCM 1995, sets out the maximum punishment authorized for wrongful use of marijuana as a dishonorable discharge, forfeiture of all pay and allowances, and confinement for two years, there are factors here that might justify a determination that the marijuana offense in this case is minor. First, it appears to be Appellant s first offense, and, secondly, it is for only a single instance of marijuana use. In the Coast Guard, a first time, single instance of marijuana use will justify an administrative discharge, but it is seldom, if ever, referred to a special or general court-martial. Normally, if any disciplinary action is taken before administrative discharge processing, it is at the Article 15 level, as in this case. In short, it appears that, notwithstanding the authorized maximum punishment, an

offense such as the one here is widely treated in the Coast Guard as a minor offense. Accordingly, should Appellant s court-martial for the marijuana offense have been barred by the prior nonjudicial punishment, under the terms of RCM 907? Did the subsequent commission of another drug offense somehow cause the marijuana use to become a serious crime?

These should be questions for the participants at trial. For that reason, rather than declaring the nonjudicial punishment void and expunging it from the record, as was done in *Gammons*, supra, we will simply order a sentence rehearing. We will leave it to Appellant to determine whether to request the convening authority to expunge the Captain s Mast from his record or to move that the military judge dismiss the marijuana offense at the sentence rehearing.

In light of the foregoing, the sentence is set aside and a sentence rehearing is ordered. The findings of guilty of the charge and specification two are affirmed. The finding of guilty of specification one is not affirmed at this time, leaving it to the trial participants at the rehearing to determine whether that offense should or should not be dismissed. If a rehearing is deemed impracticable, a supplementary court-martial order should be issued reflecting that determination, the findings, and no sentence. In any event, collection of any forfeitures pursuant to Article 58b, UCMJ, and any reduction in pay grade prior to the date of the convening authority s action pursuant to Article 57(a)(1), UCMJ, are hereby declared illegal. Any forfeitures already collected from Appellant pursuant to Article 58b, and any pay and allowances withheld because of an early reduction in grade pursuant to Article 57(a)(1) will be restored. Upon completion of all action below, the record shall be returned to this Court for further review pursuant to *Boudreaux v. U.S. Navy-Marine Corps Court of Military Review,* 28 M.J. 181 (CMA 1989).

Judge WESTON (concurring).

I remain unconvinced that the holding in *Pierce* requires more than the application of a sentence credit. However, under circumstances of this case, and in light of the precedent set by this Court *en banc* in *Gammons*, I concur with the order for a rehearing. The Chief Judge s opinion raises several excellent questions regarding the meaning of the terms of RCM 907 as well as the practical short-comings of the sentence credit envisioned by *Pierce*. Hopefully, the many questions concerning the meaning and application of *Pierce* will soon be resolved by our higher Court.

For the Court

/S/
*Brian Johnson*
Clerk of the Court