# Authority of HUD's Chief Financial Officer to Submit Final Reports on Violations of Appropriations Laws

The Consolidated Appropriations Resolution for Fiscal Year 2003 requires the Chief Financial Officer of the Department of Housing and Urban Development to report to the President and Congress on violations by the agency of the Anti-Deficiency Act and other appropriations laws concerning expenditures, but the CFO must first submit his reports to the Secretary of HUD for review and approval.

August 31, 2004

MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

You have asked for our opinion concerning the proper interpretation of an appropriations statute that directs the Chief Financial Officer ("CFO") of the Department of Housing and Urban Development ("HUD") to submit final reports to the Secretary of HUD, the President, and Congress concerning violations of the Anti-Deficiency Act ("ADA") and other statutes relating to HUD appropriations. In particular, you have inquired whether this legislation overrides language in the ADA that directs "the head of the agency" to report ADA violations to the President and Congress and, if so, whether the CFO may submit reports on ADA violations without first seeking the review and approval of HUD's Secretary. We conclude that the appropriations statute at issue does require the CFO to report to the President and Congress on violations of the ADA and other applicable appropriations statutes, but that he must first submit his reports to the Secretary for review and approval.

The ADA provides in relevant part that executive branch officials may not expend funds or enter into contracts that impose financial obligations on the United States without express congressional authorization in appropriations legislation. 31 U.S.C. § 1341(a)(1) (2000); *see also id*. §§ 1341–1342, 1349–1351, 1511–1519. Violations of the ADA—which enforces the Constitution's directive that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law," U.S. Const. art. I, § 9, cl. 7—require "appropriate administrative discipline," including possible reprimand, suspension without pay, or removal from office, and, if the violation is knowing and willful, may result in a fine or imprisonment. 31 U.S.C. §§ 1349(a), 1350.

To ensure that the President and Congress are made aware of violations of the Act, Congress directed that "[i]f an officer or employee of an executive agency . . . violates section 1341(a) or 1342 of this title, the head of the agency . . . shall report immediately to the President and Congress all relevant facts and a statement of actions taken." 31 U.S.C. § 1351. Under the ADA, therefore, the heads of the executive agencies bear responsibility for reporting violations of the ADA to the President and Congress.

248

In 2003, Congress established specific additional parameters for HUD's reporting of violations of the ADA and other statutes authorizing obligation of HUD funds. In the Consolidated Appropriations Resolution for Fiscal Year 2003 ("FY 2003 Appropriations Act" or "2003 Act"), Congress subjected the appropriation of funds for administrative and other expenses of HUD's CFO to the following conditions:

> *Provided further*, That, notwithstanding any other provision of law, hereafter, the Chief Financial Officer of the Department of Housing and Urban Development shall, in consultation with the Budget Officer, have sole authority to investigate potential or actual violations under the Anti-Deficiency Act (31 U.S.C. 1341 et seq.) and all other statutes and regulations related to the obligation and expenditure of funds made available in this, or any other Act; shall determine whether violations exist; *and shall submit final reports on violations to the Secretary, the President, the Office of Management and Budget and the Congress in accordance with applicable statutes and Office of Management and Budget circulars*.

Pub. L. No. 108-7, 117 Stat. 11, 499 (2003) (emphasis added).

The question at issue focuses, first, on the relation between the reporting requirements of the FY 2003 Appropriations Act and those of the ADA—in particular, whether the 2003 Act vests HUD's CFO with authority, *independent* of the Secretary, to report ADA violations to the President and Congress. More generally, in addressing your question, we must consider the relation between the reporting authority of the CFO under the 2003 Act and the supervisory authority of the Secretary of HUD, and ultimately of the President as the head of the Executive Branch. The General Counsel of HUD has provided his view that the FY 2003 Appropriations Act does not nullify the ADA's requirement that the "head of the agency" inform the President and Congress of any ADA violations, or that, at a minimum, the CFO's reports must first be reviewed and approved by the Secretary. *See* Letter for Jack L. Goldsmith III, Assistant Attorney General, Office of Legal Counsel, from Richard A. Hauser, General Counsel, U.S. Department of Housing and Urban Development (May 10, 2004). For the reasons set forth below, we conclude that the FY 2003 Appropriations Act does require the CFO to report to the President and Congress on violations of the ADA and other applicable appropriations statutes, but that the CFO's reports are subject to prior review and approval by the Secretary or the President.[1]

---

[1] We have not analyzed the question whether the reporting requirements set forth in the FY 2003 Appropriations Act are permanent requirements, but we are informed that HUD treats them as such. *See* E-mail for Steffen N. Johnson, Attorney-Adviser, Office of Legal Counsel, from Camille E. Acevedo, Associate General Counsel for Legislation and Regulations, Department of Housing and Urban Development (July 22, 2004). *See also* FY 2003 Appropriations Act, 117 Stat. at 499 (conditioning

In the FY 2003 Appropriations Act, Congress directed the CFO to submit his reports "*in accordance with applicable statutes and Office of Management and Budget circulars.*" 117 Stat. at 499 (emphasis added). Among the "applicable statutes" must be the ADA, 31 U.S.C. § 1351, which, as discussed above, imposes on "the head of the agency," rather than the CFO, the responsibility of reporting ADA violations to the President and Congress. Chief among the applicable OMB circulars is Circular A-11, which implements the requirements of the ADA for the Executive Branch and specifies that reports of ADA violations are to take the form of letters that shall be transmitted from the "agency head" to the President through the Director of OMB. OMB Circular No. A-11, § 145.7 (2004). OMB Circular A-11 also directs the agency to "report identical letters to the Speaker of the House of Representatives and the President of the Senate," and it specifies: "If the letters to Congress are identical to the letter to the President, include a statement to this effect in the letter to the President. If the letters to Congress are not identical to the letter to the President, you will submit a copy of the letter to Congress with your letter to the President." *Id.* Thus, although the phrase "notwithstanding any other provision of law" in the 2003 Act would generally override other laws to the extent they interfere with the CFO's exercise of his duties under the Act, that phrase cannot be read to override the terms of the ADA and OMB Circular A-11 entirely, because the requirement in the same provision that the CFO submit his final reports "in accordance with" applicable statutes and OMB circulars expressly preserves the procedures prescribed by the ADA and Circular A-11. *See Williams v. Taylor*, 529 U.S. 362, 364 (2000) (noting "the cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute").

On the other hand, the ADA and OMB Circular A-11 have general application to the deficiency reports of all executive agencies, whereas the 2003 Act is specific to HUD. It is a usual rule of construction that the specific statutory provision will trump the general where they conflict or address the same concern. *See Edmond v. United States*, 520 U.S. 651, 657 (1997) ("Ordinarily, where a specific provision conflicts with a general one, the specific governs."); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general."). It is unlikely, in our view, that Congress intended to create two redundant reporting obligations for ADA violations at HUD, one requiring a report to be submitted by the Secretary under the general terms of the ADA and one requiring a separate and independent report

---

certain HUD appropriations on the requirement that the CFO "hereafter" submit final reports on violations of the ADA and other appropriations statutes to the Secretary and the President as well as to Congress); H.R. Rep. No. 108-235, at 77–78 (2003) (describing the changes made in the FY 2003 Appropriations Act as "permanent changes" and stating that they "permanently clarif[ied] responsibilities within the Department for investigating and reporting on potential and actual violations of all appropriations laws").

to be submitted by the CFO under the specific terms of the 2003 Act. The language in the 2003 Act requiring the CFO to "submit *final* reports on violations" reinforces the view that only one report on a given violation is contemplated by the statute. Accordingly, we conclude that the HUD-specific terms of the 2003 Act were intended to assign to the CFO the duty of submitting reports to the President and Congress with respect to violations at HUD of the ADA and other applicable appropriations laws.

But it does not necessarily follow that, simply because the 2003 Act charges the HUD CFO, rather than the Secretary of HUD, with the duty to submit final reports on violations, the HUD CFO has independent and unreviewable authority to prepare and submit final reports to the President and Congress without supervision by the Secretary. The language of the 2003 Act does not require such a reading, but rather is reasonably susceptible to the interpretation that the Secretary retains his ordinary supervisory authority over the CFO, as reflected in the statute spelling out the CFO's authority and functions. *See* 31 U.S.C. § 902(a)(1) (2000) (the CFO shall "report directly to the head of the agency regarding financial management matters"). The need to avoid raising a significant constitutional problem requires that we adopt this interpretation—i.e., that the CFO's duty to prepare and submit final reports under the 2003 Act, like his other duties, is subject to the ordinary supervision of the Secretary, and ultimately of the President through the Secretary. Accordingly, we conclude that although the CFO is assigned the responsibility for submitting reports to the President and Congress on all violations of appropriations laws at HUD, including the reports required by the ADA and OMB Circular A-11, the CFO's exercise of that duty is subject to prior review and approval by the Secretary.[2]

This result follows from the rule of construction requiring that statutes be interpreted to avoid raising a significant constitutional problem, provided that doing so does not contravene the clear meaning of the statute. *See Solid Waste Agency of N. Cook Cnty. v. Army Corps of Eng'rs*, 531 U.S. 159, 173 (2001) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.") (quoting *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)). Here, we conclude that it is most reasonable to construe the FY 2003 Appropriations Act to require supervisory review by the Secretary of the CFO's reports to the President and Congress because a contrary conclusion would

---

[2] The legislative history does not elaborate on the relationship between the reporting requirements of the ADA and those of the FY 2003 Appropriations Act. The House Conference Report, which reflects the conferees' adoption of the House version of the bill, references an earlier House report that discusses HUD's past difficulties in complying with the ADA, but neither document discusses the issue of reporting in any depth. *See* H.R. Conf. Rep. No. 108-10, at 1427 (2003); H.R. Rep. No. 107-740, at 78–79 (2002).

raise serious constitutional problems by interfering with the President's exercise of his constitutional responsibility to supervise the unitary Executive Branch.

The President's ability to supervise and control the work of subordinate officers and employees of the Executive Branch, through his supervision of the principal officers of the executive agencies, is vital to the exercise of his constitutional duty faithfully to execute the laws. *See* U.S. Const. art. II, § 3 (providing that the President "shall take Care that the Laws be faithfully executed"). As we have elsewhere explained:

> The [judicial] decisions and the long practical history concerning the right of the President to protect his control over the Executive Branch are based on the fundamental principle that the President's relationship with his subordinates must be free from certain types of interference from the coordinate branches of government in order to permit the President effectively to carry out his constitutionally assigned responsibilities. The executive power resides in the President, and he is obligated to "take care that the laws are faithfully executed." In order to fulfill those responsibilities, the President must be able to rely upon the faithful service of subordinate officials. To the extent that Congress or the courts interfere with the President's right to control or receive effective service from his subordinates within the Executive Branch, those other branches limit the ability of the President to perform his constitutional function.

*Constitutionality of Statute Requiring Executive Agency to Report Directly to Congress*, 6 Op. O.L.C. 632, 638–39 (1982).

Applying these general separation of powers principles, we have concluded that statutory "requirement[s] that subordinate officials within the Executive Branch submit reports directly to Congress, without any prior review by their superiors, would greatly impair the right of the President to exercise his constitutionally based right to control the Executive Branch," and that statutory reporting requirements should generally be construed to avoid such a result. *Id*. at 633. Similarly, we have concluded that inspectors general in the Executive Branch may not be required to report information to Congress without review and approval by the head of the relevant agency, explaining that "[r]eports of problems encountered . . . may be required of the agencies in question, but . . . the statutory head of the agency . . . must reserve the power of supervision over the contents of those reports." *Inspector General Legislation*, 1 Op. O.L.C. 16, 18 (1977). *See also Authority of the Special Counsel of the Merit Systems Protection Board to Litigate and Submit Legislation to Congress*, 8 Op. O.L.C. 30, 31 (1984) ("Congress may not grant [Special Counsel] the authority to submit legislative proposals directly to Congress without prior review and clearance by the President, or other appropriate authority, without raising serious separation of powers concerns"). Thus, it would

be constitutionally problematic to interpret the FY 2003 Appropriations Act to grant HUD's CFO unreviewable authority to report to the President and Congress concerning potential violations of the ADA and other appropriations laws.[3] Because the plain terms of the 2003 Act, including its directive that reports be submitted "in accordance with" applicable statutes and OMB circulars, do not require such an interpretation, it must be avoided. The better reading of the statute is that the reports prepared by the CFO must be subject to the review and approval of the Secretary before they are finalized and submitted by the CFO to the President and Congress.[4]

In summary, we conclude that the FY 2003 Appropriations Act does give the CFO of HUD authority to report to the President and Congress on violations by the agency of the ADA and other appropriations laws concerning expenditures, but that he must first submit his reports to the Secretary for review and approval.

STEVEN G. BRADBURY
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[3] The same fundamental constitutional concern would be raised by a statute requiring a principal officer like the Secretary to make a report directly to Congress without prior review and approval by the President. We note that the ADA itself could be read to suggest such a requirement, though such a problematic interpretation of the ADA is not required by the plain language of the statute. Of course, the President, in his discretion, may permit the heads of departments to make simultaneous reports to Congress when they report ADA violations to the President through OMB, and that is the policy reflected in OMB Circular A-11.

[4] Our conclusion is not altered by the fact that the FY 2003 Appropriations Act provides that the CFO "shall . . . prescribe the content, format and other requirements for the submission of final reports on violations; and . . . prescribe such additional policies and procedures as may be required for conducting investigations of, and administering, processing, and reporting on, potential and actual violations of the Anti-Deficiency Act and all other statutes and regulations governing the obligation and expenditure of funds made available in this or any other Act." FY 2003 Appropriations Act, 117 Stat. at 500. These responsibilities of the CFO do not foreclose a substantive role for the Secretary in overseeing and directing the preparation of reports concerning violations of the appropriations laws. Although the CFO is charged in the first instance with preparing the content of his reports and establishing policies and procedures for reporting violations, we construe these responsibilities—like the CFO's other duties—to be subject to oversight by the President and the Secretary, for the reasons discussed in the text.