**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**AMERICAN FEDERATION OF TEACHERS, LOCAL 1826, Defendant**

Case No. SX-06-CV-278

Superior Court of the Virgin Islands

Division of St. Croix

August 11, 2006

TROY M. HORTON, ESQ., Assistant Attorney General—Labor, Office of Collective Bargaining, St. Croix, V.I., *Attorney for Plaintiff.*

EMILE A. HENDERSON, III, ESQ., Offices of Yvette Ross-Edwards, St. Croix, United States Virgin Islands, *Attorney for Defendant.*

DONOHUE, *Judge*

## MEMORANDUM OPINION

(August 11, 2006)

THIS MATTER is before the Court on Plaintiff's Amended Complaint and Action for Temporary Restraining Order; Preliminary Injunction; Permanent Injunction; and Breach of Contract, Defendant's Brief on Issue Regarding Whether the Actions of Individual Union Members, Who Act Without Authority of the Union, Bind the Union to Such Action, and Defendant's Closing Arguments on Government's Petition for Injunctive Relief and For Motion to Amend Complaint.

## BACKGROUND

This action for injunctive relief was brought by Plaintiff, Government of the Virgin Islands, on behalf of the Department of Education. Plaintiff alleges that on April 6, and 7, 2006, public employees and members of the American Federation of Teachers Local 1826 [Local 1826], engaged in work stoppages when employees and support staff of various public schools failed to report to work or walked out in violation of a 72 hour strike-notice. On June 7, 2006, Defendant's Motion to Dismiss, for failure to exhaust administrative remedies and failure to plead all five conditions contained in Section 345 of Title 24 of the Virgin Islands Code, was denied. In denying the Motion to Dismiss, the Court held that the general provisions of Section 345, Title 24 of the Virgin Islands Code

should be read in conjunction with the later-enacted provisions of Section 375, Title 24. The Court found that Section 375 gave specific and mandatory jurisdiction for the Court to order injunctive relief when certain conditions, presented in this case, are met. At a hearing held on April 10, 2006, the Court denied a temporary restraining order in this matter and continued the hearing to June 8, 2006, for a determination of whether a preliminary and permanent injunction should issue.

At the June 8, 2006 Hearing testimony from St. Croix Superintendent Cecilia Knowles, and local school principals established that concerted work stoppages had occurred at various schools in St. Croix on April 6 and 7, 2006, and that members of Local 1826 actively participated. (Hearing, June 8, 2006, Coleen Williams, Vaughn Hewitt, Garry Malloy, Curt Vialet, Sandra Powell) Some testimony suggested that not only were members of Local 1826 acting in coordination, but that some Local 1826 representatives were concurrently organizing or advising the action.[1] Testimony suggested that teachers were motivated by their dissatisfaction with the conditions of the school and/or with the delay in dispersing the negotiated pay increases. (Plaintiff's Brief, Pg.3, *quoting,* Hearing, June 8, 2006, Principal Vaughn Hewitt).

At the hearing, Plaintiff maintained that union members of Local 1826 who act collectively, even without authorization from the union officials, bind the union. The Defendant disagreed, arguing that only if union officials sanctioned the conduct could the union be held responsible for the collective action of its members. Specifically, the Defendant argued that only a majority vote of all members in Local 1826 can authorize or sanction any action. The Court asked the parties to submit briefs on the issue of whether the actions of individual union members who take collective action without authority of the union, bind the union to such action.

---

[1]    For example, Gary Malloy, the Principal at St. Croix Central High School, testified that he observed Local 1826 members in a meeting on April 6, 2006, and that on April 7, 2006, only five (5) of 125 members of Local 1826 showed up for work. Similarly, Sandra Howell, principal at the Alfredo Andrews School testified that on April 6, 2006, all the teachers were outside the school and Local 1826 Representatives James Howell and Bettina Jewels reported it was in protest of the school's uncleanliness. Finally, Principal Vaughn Hewitt of the John H. Woodson, Jr. High School testified that on April 7, 2006, a union meeting was taking place and that afterwards Local 1826 Representative, Gregory Johnson, reported that the teachers voted and they would not be teaching.

## DISCUSSION

As an initial matter the Court notes Plaintiff filed an Amended Complaint adding a breach of contract claim. Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the complaint as a matter of right before a responsive pleading is served. A motion to dismiss the complaint is not a responsive pleading within the meaning of Rule 15(a). *Rodgers v. IBEC Housing Co., V.I., Inc.,* 12 V.I. 166 (D.V.I. 1975). Although the Defendant has not technically served a responsive pleading within Rule 15(a), there have been two hearings on this matter, and in fact, the June 8, 2006 hearing was essentially a trial held on the issues for injunctive relief. At that hearing, testimony was given that established a factual basis for the breach of contract claim. As a result, Plaintiff should have motioned to amend the complaint to conform to evidence under 15(b) of the Federal Rules of Civil Procedure. Such a motion may be made by either party at any time yet, "failure to amend does not affect the result of trial of these issues." FED. R. CIV. PRO. 15(b). However, because amendments to the pleadings under Rule 15 shall be granted "freely when justice so requires" the Court finds that the breach of contract claim is properly before the Court. FRCP 15(a-b).

### 1. Do All 5 Elements Have to be Present

Defendant reasserts the arguments made in the Motion to Dismiss arguing, again, that Chapter 14 of Title 24 of the Virgin Islands Code, the Public Employee Labor Relations Act, 24 V.I.C. § 361 *et seq.,* should be read in conjunction with Chapter 13 of Title 24, Injunctions in Labor Disputes, 24 V.I.C. § 341 *et seq.,* such that the five elements generally required for injunctive relief must be satisfied for any injunction to issue.[2] However, as the Court explained in the Order denying the Motion

---

[2] The five factors are contained in 24 V.I.C. § 345:

(a) that acts of fraud or violence have been threatened and will be committed unless restrained, or said acts have been and will continue to be committed unless restrained; but no injunction or temporary restraining order shall be issued on account of any threat or act of fraud or violence, except against the person or persons or association or organization making the threat of committing the act of fraud or violence or actually authorizing the same after actual knowledge thereof;

(b) that substantial and irreparable injury to complainant's physical property will result;

to Dismiss, the general statute does not control over the more specific, more recently enacted statute, which requires the Court to issue an injunction against teachers who fail to give notice 72 hours prior to a work stoppage. *See*, 24 V.I.C. § 375(b);[3] *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S. Ct. 2031, 2042, 119 L. Ed. 2d 157 (1992) ("It is a commonplace of statutory construction that the specific governs the general.")

The Supreme Court has held that where a specific statute dictates a different outcome than a general one, the specific statute governs. *Edmond v. U.S.*, 520 U.S. 651, 657, 117 S. Ct. 1573, 1578 (1997). The Third Circuit Court of Appeals has reinforced this point to courts in the Virgin Islands. For example, in *Creque v. Luis*, 803 F.2d 92, 95 (3d Cir. 1986), the Third Circuit Court of Appeals affirmed a decision of the District Court of the Virgin Islands applying the more specific of two statutes holding that "once it has been determined that two statutory provisions cannot be reconciled, is that the more specific will take precedence over the more general." In *C.M.L., Inc. v. Dunagan*, 904 F.2d 189 (3d Cir. 1990), the Third Circuit Court of Appeals reversed Territorial Court and District Court Appellate decisions because the courts failed to apply the more specific, and thus controlling, statute concerning a motion for attorney's fees. In *C.M.L.*, the Third Circuit Court of Appeals held that in forcible entry and detainer proceedings, a statute specifically addressing costs in forcible entry and detainer proceedings under Virgin Island[s] law prevails over any general cost statute. *Id.*, at 190 (citing 5 V.I.C. § 541(a); 28 V.I.C. § 794).

The Court disagrees that injunctive relief cannot issue in a case involving a labor dispute, except in accord with Sections 341-351 (and only when five conditions contained in Section 345 are met) because Section 375(b) provides the Court with specific jurisdiction to issue

---

(c)   that as to each item of relief sought on each allegation greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon the defendants by the granting of relief;

(d)   that complainant has no other adequate remedy at law; and

(e)   that the public officers charged with the duty to protect the property of the complainant are unable or unwilling to furnish adequate protection.

[3]   The relevant language contained in 24 V.I.C. § 375 states:

"The Superior Court shall enjoin a strike under this subsection upon the request of the public employer if the Court determines any of the following: (1) that lawful notice of the intent to strike was not given."

injunctive relief against Class II public employees who have, are, or will, strike in violation of the 72-hour notice provision of Chapter 14. 24 V.I.C. § 375(b)(1, 4). In fact, if the Court finds that such notice was not given, the Court is required by the statute to issue the injunction: "The Superior Court shall enjoin a strike under this subsection upon the request of the public employer if the Court determines any of the following: (1) that lawful notice of the intent to strike was not given." 24 V.I.C. § 375(b)(1). Section 375 does not make any reference to the requirements of Section 345. In addition, the Legislature likely intended a different procedure to enjoin striking teachers because the Legislature found that Class II Bargaining Units (undisputedly the teachers at issue) as defined in Section 371: "consist of employees who perform services in which work stoppage may be sustained for a limited period of time but not an extended period of time without serious effects on the health and safety of the public." 24 V.I.C. § 371(a).

▮ The Court finds that the mandatory language in Section 375 cannot be harmonized with Section 345 and that the more specific statute must govern. 24 V.I.C. §§ 345, 375; *See Creque v. Luis*, 803 F.2d at 93. Therefore because Section 375 explicitly requires the Court to enjoin a strike where the 72-hour notice was not given by teachers, the Court finds a limited, specific, and superseding, source of jurisdiction to issue injunctive relief that does not require satisfaction of the more general elements listed in Section 345.

## 2. Can Members Bind the Union

The parties dispute whether under the Virgin Islands Code, a union may be bound by the actions of its members where the union has not officially sanctioned the action.

The Court must begin with the plain meaning of a statute. *See Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 907, 909 (3d Cir. 1990) ("The starting point for interpreting a statute is the language of the statute itself."); *United States v. Hodge*, 321 F.3d 429 (3d Cir. 2003). The plain meaning of the statute controls unless the statutory language is ambiguous or leads to absurd results. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) (*en banc*) (affirming the American Plain Meaning Rule enunciated by the Supreme Court in *Caminetti v. United States*, 242 U.S. 470, 485, 37 S. Ct. 192, 61 L. Ed. 442 (1917)).

Section 383(b) of Title 24 of the Virgin Islands Code states that "[a]ny exclusive representative of public employees of this Territory shall be bound by the acts of its agents." This is clarified in Sub-Section (d) of the same section: "in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling." 24 V.I.C. § 383(d).

■ The Court finds that under the plain meaning of the statute, a union can clearly be held responsible for the acts of its agents regardless of any prior authorization or post-action ratification. 24 V.I.C. § [3]83. The Court does not find ambiguity in the statutory language nor does this plain meaning interpretation lead to an absurd result. Under the plain meaning, the statute does not hold the union responsible for "wildcat" actions or actions of individual members, but rather the statute appears reasonably tailored to prevent exculpation when the union acts collectively through its agents, in pursuit of union objectives, without compliance with statutory devises in place for safety of the public. *See id.* This case presents a good example why the legislature could have intended to hold the union responsible. Here the vast majority of teachers at educational institutions walked out, endangering students compromising their safety and well being, while union representatives were seen holding meetings and conferencing and indeed acting as spokespersons to air to the administration the grievances underlying the work stoppage.

Defendant urges the Court to interpret the statute such that the union can only be held responsible for actions taken after a vote of approval by the entire membership. Defendant's interpretation is contrary to the explicit language of Section 383(d) which states that liability attaches regardless of authorization or ratification. 24 V.I.C. § 383(d) ("whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling"). Defendant attempts to rely on federal cases interpreting federal law for the premise that Local 1826 cannot be held responsible for the coordinated actions of its members. [4] However,

---

[4] For example, Defendant cites *U.S. v. White*, 322 U.S. 694, 64 S. Ct. 1248, 88 L. Ed. 1542 (1944) and a case citing *White* for the proposition that the actions of individuals cannot bind a union without proof of ratification. However Defendant neglected to cite the Supreme Court in *White* stating:

these cases must be distinguished because they do not discuss the Virgin Islands law on point and the Defendant has not argued that Virgin Islands Law is unconstitutional or preempted by federal law. *See Id.*

Defendant further argues that Section 383 should only apply against union members who do not wish to be bound by an official's action. However, the Court cannot find support for Defendant's one sided interpretation of the statute because Section 383 unambiguously states that union officials can be bound by the actions of its agents. 24 V.I.C. § 383.

The Court concludes that the essential issue is whether the members and representatives of Local 1826 were acting as agents of the Union or as individuals. The witnesses testified that Local 1826 had 90% to 100% participation in the work stoppages on April 6 and 7, 2006. (June 8, 2006, Hearings.) Representatives of Local 1826 participated in union meetings and reported union grievances to school officials and reported that the teachers would not teach. There is no evidence that Local 1826 took any steps to separate itself from the actions of its members/representatives during or directly after the two days of work stoppages on April 6 and 7, 2006. As such, any reasonable person would have assumed that the Representatives of Local 1826 acted with authority. *See* RESTATEMENT (SECOND) AGENCY §§ 8 cmt. a & c, 43. In sum, the Court finds that there were strikes by union members in pursuit of union objectives carried out, at least in part, through union infrastructure and union representatives acted with apparent authority and as such bind Local 1826. *See* 24 V.I.C. § 383; RESTATEMENT (SECOND) AGENCY § 49 cmt.e.

■ The Court makes the following findings of fact and conclusions of law: (1) the public employees, members of Local 1826, used concerted action to engage in strikes on April 6 and 7, 2006, for the purpose of influencing a change in the condition, compensations, rights, privileges or obligations of their employment; (2) that 72-hour notice of the intent to strike was not given, and thus the strikes are in violation of the notice

---

"The only issue in this case relates to the nature and scope of the constitutional privilege against self-incrimination. We are not concerned here with a complete delineation of the legal status of unincorporated labor unions. We express no opinion as to the legality or desirability of incorporating such unions or as to the necessity of considering them as separate entities apart from their members for purposes other than the one posed by the narrow issue in this case." *Id.*, at 697, 1250.

provision of Section 375(b) of Ti[t]le 24 of the Virgin Islands Code; (3) that unless Local 1826 is enjoined and if such strikes are permitted to commence or continue, they will seriously harm the health of school children; (4) that 24 V.I.C. § 375(b) vests this court with the authority and obligation to enjoin Local 1826 from striking without complying with the 72-hour notice requirement so that adequate arrangements can be made to guard the safety and welfare of the children of this community. *See* 24 V.I.C. § 371(a). Therefore the Court finds that Plaintiff has met the burden of establishing that Local 1826 acted collectively and deliberately in an unannounced work stoppage in order to influence a change in conditions and/or compensation in violation of the 72-hour notice requirements. 24 V.I.C. 375(b)(1).

An Appropriate Order will be entered.