CRAWFORD, Judge
(dissenting).
I respectfully dissent from the majority’s conclusion that the proceedings at the lower court are invalid and void for the following reasons. First, assuming Appellant has standing, the majority’s holding that the assignment of a Member of Congress who is a Standby Reserve officer to a panel of the lower court violates the Incompatibility and Ineligibility Clauses in Article I, Section 6 of the United States Constitution is inconsistent with the text, history, tradition, and precedent of the clauses. Second, assuming a constitutional error, that error was harmless beyond a reasonable doubt. Finally, assum *8 ing a constitutional violation, the majority’s holding should be applied prospectively. See Buckley v. Valeo, 424 U.S. 1, 142, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87-88, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion), superseded by statute, Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333; Cipriano v. City of Houma, 395 U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Allen v. State Board of Elections, 393 U.S. 544, 572, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969).
Pursuant to his pleas, Appellant was convicted of wrongfully using cocaine in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). After an extensive discussion under Rule for Courts-Martial (R.C.M.) 910, and this Court’s precedent, see United States v. Redlinski, 58 M.J. 117 (C.A.A.F.2003), the military judge accepted the plea and sentenced Appellant to a bad-conduct discharge, 135 days of confinement, and reduction to the lowest enlisted grade. Pursuant to the pretrial agreement, the convening authority approved the sentence but reduced the confinement to four months. During the appellate process, Appellant has had every opportunity to show actual prejudice or seek to disqualify Senator Graham on the basis of R.C.M. 902 and has not done so.
TEXT, HISTORY, TRADITION, AND PRECEDENT
A. Introduction
The Constitution sets up a governmental structure with three branches of government to serve as a cheek on each other because of their distinctive organizations, responsibilities, and procedures. This principle of separation of powers, recognized in United States v. Scheffer, 523 U.S. 303, 311-12, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), permits the government to operate efficiently and preserves the initiative of those serving in the various branches and the right of ordinary citizens in exercising their right to vote.
Over time, from one generation to the next, the Constitution has come to earn the high respect and even, as Madison dared to hope, the veneration of the American people____ The document sets forth, and rests upon, innovative principles original to the American experience, such as federalism; a proven balance in political mechanisms through separation of powers; specific guarantees for the accused in criminal cases; and broad provisions to secure individual freedom and preserve human dignity. These doctrines and guarantees are central to the American experience and remain essential to our present-day self-definition and national identity.
Roper v. Simmons, 543 U.S. 551, 578, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).
The checks and balances set forth below ensure that Senator Graham’s position as an appellate judge is not incompatible with being a Member of Congress and does not interfere with the separation of powers between the executive, legislative, and judicial branches.
B. Text
The Ineligibility and Incompatibility Clauses in Article I, Section 6 of the Constitution provide as follows: “[n]o Senator ... shall ... be appointed to any civil Office under the Authority of the United States” and “no Person holding any Office under the United States shall be a Member of either House.”[1] Do the terms “civil Office” or “Office under the United States” include a trial or appellate judge in the military?
Certainly, the plain meaning of these clauses ensures that the branches of government remain structurally independent and that a Member of Congress is not in control *9 of an executive branch as in a parliamentary system government. These clauses do not prohibit Senator Graham from serving both as a Standby Reserve officer and appellate judge on the United States Air Force Court of Criminal Appeals. Nor does the history of the text preclude Senator Graham’s position as an appellate judge.
The Constitution appears to be exclusive in defining these responsibilities and powers permitting a balance and excluding one decision maker from usurping another’s power. These powers do not fit into neat categories, but the Constitution is designed to secure, so far as possible, that the separation of powers boundary lines are not crossed. “While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government.” Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635, 72 S.Ct. 863, 96 L.Ed. 1153 (1952).
C. History
The Journal of the Federal Convention was to be secret and William Jackson, Secretary, was required to destroy all scraps of paper. The notes of each member were turned over to him and the record was created. 1 The Records of the Federal Convention of 1787, at xi-xxv (Max Farrand ed., Yale Univ. Press 1966). These notes, which the majority ignores, help in interpreting the intent of the drafters of these relevant provisions of the Constitution.
The original clauses in Article I, Section 6 of the Constitution were put forth by Edmond Randolph and “Res[olve]d that members of the First Branch of the National Legislature ought to be ... ineligible to any office established by a particular State, or under the authority of the United States ... during a term of service, and for the space of its expiration.” 1 Farrand, supra, at 20. The members were concerned about the President rewarding members of the legislature with official posts. See id. at 386. James Madison was concerned with the unnecessary creation of offices. Id. Alexander Hamilton stated:
Our prevailing passions are ambition and interest; and it will ever be the duty of a wise government to avail itself of those passions, in order to make them subservient to the public good for these ever induce us to action. Perhaps a few men in a state, may, from patriotic motives, or the display of their talents, or to reap the advantage of public applause, step forward; but if we adopt the clause (ineligibility), we destroy the motive.
Id. at 381.
The Incompatibility Clause ensures separation of the branches and prevents one branch from rewarding another branch by giving it an appointment within that branch. Generally, the Incompatibility Clause is designed to prevent full-time positions under certain circumstances, not part-time positions. But such simultaneous holding of legislative and executive office does not:
present an insuperable difficulty____ In the face of this provision the President might still constitute a cabinet council out of the chairmen of the principal congressional committees and then put his own powers and those of the heads of departments at the disposal of this council.
Edward S. Corwin, The President, Office and Powers 1787-1957 14 (Randall W. Bland et al. eds., 5th ed.1984); see also Harold J. Laski, The American Presidency, Interpretation 70-110 (1940); M.J.C. Vile, Politics in the USA 195-200 (1970). The drafters thought that the simultaneous holding of offices by a Member of Congress would be permissible either as the head of an executive department or cabinet and being a Member of Congress with the right of attendance but not the right to vote. Such a Member could participate in Congressional debate. Corwin, supra, at 296.
D. Tradition
The Incompatibility Clause was not designed to prevent Members of Congress from being members of the militia, the National Guard, or the Reserves. See Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 210 n. 2, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). If Professor Corwin is right that there may be “cabinet councils,” then the *10 Incompatibility Clause was not written to prevent a Member of Congress from examining a defendant’s ease as a Standby Reserve officer, either working for points, or on two weeks of active duty. See Corwin, supra at 14. Senator Graham’s commission was not created after he became a Member of Congress. How Senator Graham’s career in the Air Force began and how it progressed demonstrates why the Incompatibility Clause does not apply. After graduation from the University of South Carolina School of Law, Senator Graham entered active duty and served as a judge advocate between January 1982 until August 1988 when he was transferred to the Air Force Reserve. Lane, 60 M.J. at 782; Project Vote Smart, http://www.vote-smart.org/bio.php?can_id=CNIP7869 (last visited Sept. 11, 2006). He then served in the Air National Guard from 1989 to 1994 and transferred back to the Air Force Reserve in 1995 where he has served to the present time. Lane, 60 M.J. at 782. There is no evidence that Senator Graham did not appear at various sessions of Congress or that he has taken positions that would be incompatible with his position as an appellate judge. If Senator Graham cannot perform his duties as a Senator, the selection process of standing for election may serve as a discriminator.
In addition to a majority exercising the ballot box, Article I, Section 5 of the Constitution provides that “[e]ach House may determine the Rules of its Proceedings [and] punish its Members for disorderly Behaviour .... ” This provides congressional oversight.
If Congress thought there was a potential violation by Senator Graham, they were free to take action. See U.S. Const, art. II, § 2, cl. 2. Over the last few months, they have not. If a Member of Congress does hold an incompatible office, action has been taken against them when they sought to hold full-time positions during the Civil War. See Cong. Globe, 37th Cong., 2d Sess. 343 — 44 (1862). But when the Member resigned his commission before entering the Senate, no further action was taken. Id. at 344. Neither the text nor history of the Ineligibility and Incompatibility Clauses precludes Senator Graham from sitting as an appellate judge, but does precedent?
E. Precedent
The President has the authority to nominate individuals to be federal officers who should be confirmed “with the Advice and Consent of the Senate.” U.S. Const, art. II, § 2, cl. 2. That same provision provides that Congress has a role and that role is creating other officers “established by Law.” Id. Congress may also vest the authority to appoint inferior officers with the President and other department heads. Id. The role of Congress and the President in appointing officers, including inferior officers, has been the subject of litigation in cases decided by this Court and reviewed by the Supreme Court. See, e.g., Edmond v. United States, 520 U.S. 651, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997); Ryder v. United States, 515 U.S. 177, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995).
“Officers of the United States” as used in the Appointments Clause applies at least to commissioned officers and is not the same as “civil Office under the Authority of the United States” or “Office under the United States.” Edmond, 520 U.S. at 656-66, 117 S.Ct. 1573 (reappointment not needed because judges were “Officers of the United States”); see also Weiss v. United States, 510 U.S. 163, 172-76, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994); Ryder, 515 U.S. at 180-85, 115 S.Ct. 2031.
We should not expand Edmond, Ryder, and Weiss beyond what they hold. None of these cases cited by the majority has addressed the Incompatibility or Ineligibility Clauses in Article I. A number of the cases cited address presidential and congressional authority under the Appointments Clause. In Edmond, the Supreme Court held that military judges are inferior officers appropriately appointed by the President and do not have to be reappointed to serve as a trial or appellate judge. 520 U.S. at 656-66, 117 S.Ct. 1573. While appointed by the Judge Advocate General, they may not be subject to unlawful command influence. Weiss, 510 U.S. at 180, 114 S.Ct. 752. The Supreme *11 Court reemphasized that the Court of Appeals for the Armed Forces and the Courts of Criminal Appeals are Article I courts. Edmond, 520 U.S. at 664 n. 2, 117 S.Ct. 1573. In Weiss, the Supreme Court held that commissioned officers did not need a reappointment under the Appointments Clause to serve as military judges. 510 U.S. at 172-76, 114 S.Ct. 752. The Supreme Court also held that the Due Process Clause did not require fixed terms of office for military judges. Id. at 177-81, 114 S.Ct. 752. In Ryder, the Supreme Court again addressed the Appointments Clause and held that a civilian member of the Coast Guard Court of Military Review was not properly appointed to that court. 515 U.S. at 180-88, 115 S.Ct. 2031. In a reexamination of the Coast Guard Court of Criminal Appeals in Edmond, the Supreme Court indicated that the judges of that court were inferior officers who could be appointed by the Secretary of Transportation. 520 U.S. at 666, 117 S.Ct. 1573.
Both Edmond and Weiss imply that being a military judge, which is an “inferior office,” is not an “Office under the Authority of the United States” under the Ineligibility Clause or “holding any Office under the United States” under the Incompatibility Clause. While the framers gave little guidance as to “inferior” and “principal” officers, the Supreme Court did give more guidance as to the clauses in Edmond. 520 U.S. at 660-61, 117 S.Ct. 1573. In Freytag v. Commissioner, 501 U.S. 868, 881, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991), the Supreme Court held that special trial judges were officers, albeit inferior officers, because their positions were “established by law” under Article II, Section II, Clause 2 of the Constitution, and their duty salaries and appointments were specified by statute. See also United States v. Germaine, 99 U.S. 508, 511-12, 25 L.Ed. 482 (1879). Edmond dealt with the question of whether military judges required Senate confirmation because the judges were considered to be inferior officers rather than principal officers even though long-standing tradition was otherwise. 520 U.S. at 655-66, 117 S.Ct. 1573. The Supreme Court concluded that military trial judges did not have to be confirmed by the Senate. Id.
Who may appoint inferior officers and who are heads of departments are entirely different questions than the issue presented here. Justice Scalia explained in Edmond:
Generally speaking, the term “inferior officer” connotes a relationship with some higher ranking officer or officers below the President: whether one is an “inferior officer” depends on whether he has a superi- or. It is not enough that other officers may be identified who formally maintain a higher rank, or possess responsibilities of a greater magnitude.
520 U.S. at 662-63, 117 S.Ct. 1573. The Supreme Court made clear in Edmond that inferior officers are officers whose work is directed and supervised at some level by others who are appointed by presidential nomination with the advice and consent of the Senate. Id. at 659-63, 117 S.Ct. 1573. The majority reads too much into these opinions without focusing on their text, history, and precedent.
There is no indication in the UCMJ, including Article 67, UCMJ, 10 U.S.C. § 867 (2000), that appointing a Member of Congress to be a trial judge or an appellate judge is forbidden. In fact, Congress may well desire the synergism that would result from having a Member of Congress serving as a trial or appellate judge in the military justice system. Many reservists have served in the federal judiciary and state judiciary examining administrative actions by the services and have even reviewed some criminal cases, for example, Judge Haldane Robert Mayer, United States Court of Appeals for the Federal Circuit, and Judge James Leo Ryan, United States Court of Appeals for the Sixth Circuit, members of the Reserves. No federal court has precluded those reviews. The action by the majority would prevent Members of Congress as policy makers from obtaining a critical prospective on national security and the operation of the military justice system. To hold that these inferior officers and individuals who have been commissioned, and are reviewing cases for points and not pay, have somehow advanced to principal officers that violate the Incompatibility or Ineligibility Clauses reads far too much *12 into Supreme Court practice and the language of the Constitution.
To rely on the Incompatibility Clause to disqualify Senator Graham expands precedent and overlooks the practice of appointing members of the Senate to serve on diplomatic or semi-diplomatic missions. See Corwin, swpra, at 86. It also undermines the practice of Members of Congress being members of the Reserves, National Guard, and militia. The office held by Senator Graham existed prior to his serving on the appellate court.
HARMLESS BEYOND A REASONABLE DOUBT
If there was a violation of the Incompatibility Clause, Appellant has not established any actual adverse impact on his findings or sentence. Both the Congress in enacting Article 45, UCMJ, 10 U.S.C. § 845 (2000), and the President in promulgating R.C.M. 910, have designed a system much more protective than the federal or state system to ensure that a truly knowing and voluntary plea was obtained in this case. Thus, any error here would be harmless beyond a reasonable doubt.
PROSPECTIVE RULE
If relief is to be granted, it should be granted prospectively and not to all cases on direct review. Griffith v. Kentucky, 479 U.S. 314, 321-22, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The efficient operation of the military justice system is important for maintaining good order and discipline in the armed forces. In a number of cases the Supreme Court has recognized the public interest in avoiding retroactive invalidation of actions by public officials. The Supreme Court has avoided retroactive application of decisions that challenge the appointment of officers or the exercise of their power. Buckley, 424 U.S. at 142, 96 S.Ct. 612 (Appointments Clause violation); Northern Pipeline Construction Co., 458 U.S. at 87-88, 102 S.Ct. 2858 (plurality opinion holding the unconstitutional grant of authority to bankruptcy judges did not invalidate prior acts); Cipriano, 395 U.S. at 706, 89 S.Ct. 1897 (declining to invalidate municipal bonds issued by unconstitutionally elected body). While a trial should be free of constitutional violations, when, as in this case, an accused has shown no prejudice, there is no requirement for a readjudication of the findings or sentence. The judges on the Courts of Criminal Appeals are an integral part of the military justice system and the failure to demonstrate any meaningful likelihood of prejudice requires affirmance of the court below. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).
CONCLUSION
Assuming standing, the assignment of Senator Graham as an appellate judge is not inconsistent with the text, history, tradition, and precedent of the Incompatibility and Ineligibility Clauses. Thus, I respectfully dissent.

. No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased [sic] during such time [commonly called the Ineligibility Clause or Emoluments Clause]; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.
U.S. Const, art. I, § 6, cl. 2.